IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHN J. FLYNN, et al.,                          )
                                                )
                Plaintiffs,                     )
                                                )
        v.                                      )    C.A. No. 06-2080 (ESH)
                                                )
RECON REFRACTORY & CONSTRUCTION, INC.,          )
                                                )
                Defendant.                      )
                                                )

## PLAINTIFFS' MOTION FOR (i) A PRELIMINARY INJUNCTION COMPELLING INTERIM PAYMENTS OF EWL AND (ii) AN EXPEDITED HEARING

For the reasons set forth in the attached Memorandum in Support of this Motion for (i) a

Preliminary Injunction Compelling Interim Payments of EWL and (ii) an Expedited Hearing, the

Plaintiffs, Trustees of the Bricklayers & Trowel Trades International Pension Fund ("Fund" or

"IPF"), by their attorneys, hereby move this Court to hold an expedited hearing within twenty

(20) days of this motion and to: (1) enter a preliminary injunction compelling the Defendant,

Recon Refractory & Construction, Inc. ("Recon"), to make all past, present, and future interim

payments of employer withdrawal liability, in accordance with the schedule set forth in the

Plaintiffs' October 4, 2006 letter, unless and until an arbitrator determines that the Plaintiffs are

not entitled to the assessed withdrawal liability; and (2) enter a judgment against Recon in the

amount of $27,582.97, for delinquent interim payments, interest, and liquidated damages.  The Fund also seeks attorney's fees and costs based on an application to be submitted on a date designated by the Court.

Respectfully submitted,

Dated: February ___7___, 2007

By:_____
Ira R. Mitzner, DC Bar No. 184564
Charles V. Mehler III, DC Bar No. 475909
Johnisha Matthews, DC Bar No. 492478
DICKSTEIN SHAPIRO LLP
1825 Eye Street NW
Washington, DC  20006-5403
(202) 420-2200
(202) 420-2201

*Attorneys for Plaintiffs*

DSMDB-2209201v01

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN J. FLYNN, et al., | ) |
| Plaintiffs, | ) |
| v. | ) C.A. No. 06-2080 (ESH) |
| RECON REFRACTORY & CONSTRUCTION, INC., | ) |
| Defendant. | ) |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR (i) A PRELIMINARY INJUNCTION COMPELLING INTERIM PAYMENTS OF EWL AND (ii) AN EXPEDITED HEARING

Plaintiffs, Trustees of the Bricklayers & Trowel Trades International Pension Fund ("Fund" or "IPF"), submit this Memorandum in support of their motion for a preliminary injunction compelling the Defendant, Recon Refractory & Construction Inc. ("Recon"), to make all past, present, and future interim payments of employer withdrawal liability ("EWL") owed to the Fund and required by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"). As set forth below, Recon is compelled to make these interim payments, notwithstanding its filing of a demand for arbitration, until resolution of the EWL claim by the arbitrator. Because Recon's continuing failure to make interim payments each month deprives the Fund of monies needed to fund the benefits provided to its participants and beneficiaries, the Fund also moves for an expedited hearing to be held on this motion within 20 days.

### STATEMENT OF THE CASE

For purposes of deciding the narrow issue before this Court—the Fund's statutory right to collect interim withdrawal liability payments from Recon—the relevant facts are few and dispositive.

Recon is a California construction industry employer that, for a decade, made contributions to the Fund under various collective bargaining agreements it had signed with Bricklayer-affiliated unions. *See* Declaration of David F. Stupar ("Stupar Decl."), ¶ 9, attached as Exhibit A.    The Fund is a construction industry multiemployer employee benefit plan administered in the District of Columbia, subject to the MPPAA. *Id.* ¶ 2.    The MPPAA was enacted for the purpose of funding the liabilities generated by employers who withdrew from plans, leaving other employers to pay those liabilities. *See, e.g., Joyce v. Clyde Sandoz Masonry*, 871 F.2d 1119, 1120 (D.C. Cir. 1989); *see also I.A.M. Nat'l Pension Fund v. Clinton Engines Corp.*, 825 F.2d 415, 416 (D.C. Cir. 1987).    When an employer withdraws from the Fund, the trustees have a fiduciary duty under the MPPAA to collect EWL. *See* Stupar Decl. ¶ 4.

In 2005, Recon terminated its relationship with the Bricklayers, but continued to perform the same type of work in the same geographic jurisdiction.[1] *Id.* ¶ 10.    On October 4, 2006, the Fund sent Recon a notice of assessment of withdrawal liability for $657,153, with a 68-month payment schedule of $11,356.77 per month, with the first payment due on December 4, 2006, plus a final payment of $7,298.29, pursuant to 29 U.S.C. §1399(b)(1)(A). *Id.*, Ex. 2 thereto.    The Fund also sent Recon the calculations supporting the EWL assessment, performed by the Fund's actuary. *Id.*, Ex. 3 thereto.

The MPPAA provides that 60 days after the notice of EWL sent by the Fund to the employer, the employer must begin to make the monthly payments contained in the Fund's letter. *See* 29 U.S.C. § 1399(c)(2).    On December 6, 2006, Fund counsel, Ira R. Mitzner, sent a letter to counsel for Recon, notifying Recon that it had failed to make the first required interim payment,

---

[1] A construction industry withdrawal occurs when:

    (A)    an employer ceases to have an obligation to contribute under the plan and

    (B)    the employer continues to perform work in the jurisdiction of the collective bargaining agreement of the type for which contributions were previously required.

29 U.S.C. § 1383(b)(2).

DSMDB-2197273v01

which was due on December 4, 2006. *See* Declaration of Ira R. Mitzner ("Mitzner Decl."), ¶ 4, attached as Exhibit B, Ex. 4 thereto. Pursuant to 29 U.S.C. § 1399(c)(5), Recon was given 60 days, or until February 5, 2007, to cure its failure to make this interim payment, or it would be deemed in default under the MPPAA. *Id.* As of the date of this motion, Recon has still not made any interim payments, including the payments for December 2006 and January 2007 that are past due. *See* Stupar Decl. ¶ 12.

On January 5, 2007, counsel for Recon notified the Fund that it was demanding arbitration pursuant to 29 U.S.C. §1401(a), 29 C.F.R. Part 4221 and "the IPF's Withdrawal Liability Procedures." *See* Mitzner Decl. ¶ 5, Ex. 5 thereto. Recon advised that it was disputing "the withdrawal liability amounts and the amortization schedule, without limitation." *Id.* Recon requested that Fund counsel contact him to select an arbitrator, and further asked for a clarification of one provision of the Fund's Withdrawal Liability Procedures, which had been enacted by the Trustees.[2] *Id.* On January 23, 2007, the Fund responded to Recon's request for clarification, acknowledging Recon's notice of arbitration and suggesting potential arbitrators. *Id.* ¶ 6, Ex. 6 thereto.

Two months after Recon's first interim payment was due, Recon still has not made a single interim payment. *See* Stupar Decl. ¶ 12. Accordingly, the Trustees bring the present motion to compel such payments.

---

[2]  In that same letter, Recon also raised issues going to the merits of the EWL determination. The Fund submits that those issues are not relevant here, and must be decided solely by the arbitrator.

DSMDB-2197273v01

## ARGUMENT

I.    **UNDER THE MPPAA AND THE LAW OF THIS CIRCUIT, RECON MUST MAKE INTERIM PAYMENTS NOTWITHSTANDING ANY REQUEST FOR REVIEW OR DEMAND FOR ARBITRATION**

The MPPAA clearly requires employers to make interim EWL payments irrespective of whether the employer has requested review or demanded arbitration of the EWL assessment:

> Withdrawal liability *shall* be payable in accordance with the schedule set forth by the plan sponsor . . . beginning no later than 60 days after the date of demand *notwithstanding any request for review or appeal of the amount of such liability or of the schedule.*

29 U.S.C. § 1399 (c)(2) (emphasis added).    Accordingly, unless and until Recon receives an arbitrator's decision to the contrary, the express terms of the MPPAA require it to make interim payments. *See also* 29 U.S.C. §§ 1401 (b)(1), 1401(d).

This Court has confirmed on many occasions that section 29 U.S.C. § 1399(c)(2) means exactly what it says – a pension fund is entitled to interim payments pending a decision by an arbitrator.    In *Connors v. Calvert Development Co.*, 622 F. Supp. 877 (D.D.C. 1985), for instance, this Court, in granting a motion to compel interim payments, specifically concluded that "withdrawal liability payments must be made by an employer according to the plan's schedule even if the employer disputes the liability":

> The importance of providing plan trustees with an efficient procedure to insure continued funding upon an employer's withdrawal is noted clearly at Section 1399 (c) (2).    *A dispute over withdrawal liability does not suspend the obligation to pay, but, rather, such payment is due "notwithstanding any request for review or appeal of determinations of such liability or of the schedule."    The courts have supported unequivocally this interpretation of the employer's obligation to make withdrawal liability payments.*

*Id.* at 879 (emphasis added) (citations omitted).

In *Connors v. Brady-Cline Coal Co.*, 668 F. Supp. 5, 7 (D.D.C. 1987), Chief Judge Hogan reached the same conclusion, noting that any balance of hardship already has been struck

DSMDB-2197273v01

by Congress, and thus interim payments must be made pursuant to the monthly payment schedule sent by the fund to the employer.

> This Circuit . . . has recently noted that under MPPAA 'adequate safeguards exist to ensure that . . . [the employer] will promptly recover any overpayment in the lump sum with interest.' *I.A.M. National Pension Benefit Plan v. Cooper Industries, Inc.*, 789 F.2d 21, 25 (D.C. Cir.), *cert. denied*, 107 S. Ct. 473 (1986) . . . . 'Congress showed no . . . solicitude for the cash flow problems of employers. Indeed, . . . under the MPPAA's statutory scheme, any assessment of irreparable harm flowing from an injunctive order regarding interim withdrawal liability payments would almost certainly favor the pension fund." *Id.*

*Brady-Cline Coal Co.*, 668 F. Supp at 8. Finding this principle "well settled," the Court ordered the employer to make all required interim payments pending arbitration of the dispute. *Id.* at 7; *see also, e.g., Trustees of the United Mine Workers v. Morrison Knudsen Corp.*, 931 F. Supp. 4, 9 (D.D.C. 1996) (concluding that pension plan was entitled to interim payments because of the unambiguous meaning of 29 U.S.C. §§ 1399(c)(2) and 1401(d)). Accordingly, both the plain language of the MPPAA and the prior decisions of this Court support issuance of the order sought by the Fund.

Recon cannot be heard to complain of the purported damage that it will suffer if forced to make interim payments. The D.C. Circuit has squarely held that no irreparable harm flows from an order requiring interim payments. *See I.A.M. National Pension Fund v. Cooper Indus., Inc.*, 789 F.2d, 21, 25 (D.C. Cir. 1986), *cert. denied*, 107 S. Ct. 473 (1986) (stating further that because no irreparable harm results from an order requiring interim payments, such an order is not the equivalent of an order granting an injunction and therefore is not immediately appealable). To the contrary, it is *the Fund* that will suffer irreparable harm if an order compelling interim payments is *not* entered. As noted by the Third Circuit in *Galgay v. Beaverbrook Coal Co.*, 105 F.3d 137, 140 (1997), Congress, by enacting the interim withdrawal liability provisions of the MPPAA, "has effectively determined that pension funds will be

DSMDB-2197273v01

irreparably harmed unless employers are enjoined to make interim payments while litigation proceeds." For this reason, "the traditional four-prong test for garden-variety preliminary injunctions is not applicable" when a pension fund is seeking to compel interim EWL payments. *Galgay*, 105 F.3d at 140. Rather, Congress has concluded that because "the uninterrupted flow of payments is important in itself . . . and . . . the ultimate recovery of payments will not suffice to make the Fund whole," employers must be required to make interim payments without any analysis of the harms at issue and without regard to either party's probability of success on the merits. *Id.* The Court of Appeals of this Circuit adopted a similar approach in *Cooper. See Cooper*, 789 F.2d at 25. Consistent with these decisions, this Court should order Recon to make interim payments and decline any invitation by Recon to examine either the harm that it will purportedly suffer from such relief or the merits of the Fund's EWL claim, which is a decision solely for the arbitrator.

**II.     THE FUND IS ENTITLED TO A PRELIMINARY INJUNCTION COMPELLING THE INTERIM PAYMENTS, PLUS INTEREST, LIQUIDATED DAMAGES, AND ATTORNEY'S FEES FOR THOSE PAYMENTS ALREADY PAST DUE**

It is undisputed in the present case that (i) Recon withdrew from the Fund; (ii) the Fund sent Recon an EWL notice requiring that its first interim payment be made on December 4, 2006, and on a monthly basis thereafter; and (iii) Recon has failed to make its interim payments for both December 2006 and January 2007. Under the MPPAA and the law of this and other Circuits, the Fund is therefore entitled to an order compelling both these payments and all future payments until a decision by the arbitrator is issued. As stated in *Galgay* in words that are equally applicable here: "The Fund has sustained its burden of showing that withdrawal liability was assessed, [the employer] was notified and payments were not made. That is all the statute requires." *Galgay*, 105 F.3d at 141.

Moreover, employer payments "prior and subsequent to" an arbitration award are addressed in 29 U.S.C. § 1401(d), which provides that if an employer fails to make a required payment, it "shall be treated as" a delinquency within the meaning of 29 U.S.C. § 1145. When a delinquency arises under 29 U.S.C. § 1145, the Fund is entitled to seek redress under 29 U.S.C. § 1132(g)(2), which provides that the court "shall" award the fund not only the delinquent monies, but also interest as set by the plan, liquidated damages, and attorney's fees. Pursuant to this authority, the Fund is entitled, in addition to injunctive relief, to the following damages[3] arising from the December 2006 and January 2007 interim payments that Recon has already missed, plus attorney's fees in an amount to be determined: [4]

| | |
|---|---|
| Delinquent Payments: | $22,713.54 |
| Interest: | $326.71 |
| Liquidated Damages: | $4,542.72 |
| Total: | $27,582.97 |

## III.  THE FUND REQUESTS AN EXPEDITED HEARING PURSUANT TO LOCAL CIVIL RULE 65.1

Pursuant to Local Civil Rule 65.1, the Fund moves for an expedited hearing to be held within 20 days of the filing of this motion. As noted above, Congress, in enacting the MPPAA, was particularly concerned with the continued viability of pension funds and "effectively determined that pension funds will be irreparably harmed unless employers are enjoined to make interim payments while litigation proceeds." *Galgay*, 105 F.3d at 140. Moreover, legislation

---

[3]  *See* Declaration of Claudette Elmes, ¶¶ 2-6, attached hereto as Exhibit C, for an explanation of how the damages were calculated.

[4]  If the Court grants the requested relief, the Fund is prepared to submit a declaration setting forth the attorney's fees and costs it incurred in connection with collection of the past due payments, within 30 days of such order, or at some other time as may be requested by the Court. *See* Mitzner Decl. ¶ 9.

7

DSMDB-2197273v01

recently enacted by Congress is squarely directed at pension fund underfunding. *See* Pension Protection Act of 2006, Pub. L. No. 109-280, 120 Stat. 780. In the present case, Recon has already caused the Fund to suffer harm by failing to make its accrued interim payments for December 2006 and January 2007, and will continue to inflict ongoing harm should it choose not to make each of the future monthly payments due during the pendency of an arbitration dispute. As the monies owed by Recon and other employers in interim payments are needed to fund the benefits provided to the Fund's participants and beneficiaries, it serves the interests of not only the Fund, but also its participants and beneficiaries, for this motion to compel interim payments to be heard and decided by the Court without delay. *See* Stupar Decl. ¶ 5. Indeed, while Recon is but one participating employer, the Fund, absent timely Court intervention, would be unable to fulfill its obligation to participants if other employers similarly refused to make their required interim payments during the lengthy process for arbitration of EWL claims. For these reasons, this Court should hold an expedited hearing, within 20 days, to rule on the Fund's motion for an injunction compelling Recon to comply with its interim payment obligations.

## CONCLUSION

For the foregoing reasons, the Court should hold an expedited hearing within 20 days to consider the Fund's motion (i) for entry of an injunction compelling Recon to make all future EWL interim payments in accordance with the schedule set forth in the Fund's October 4, 2006 letter unless and until an arbitrator determines that the Fund is not entitled to the assessed EWL, and (ii) for an order requiring Recon to pay its past due interim payments for December 2006 and January 2007, in the amount of $22,173.54, plus interest of $326.71, and liquidated

DSMDB-2197273v01

damages of $4,542.72, for a total of $27,582.97, in addition to attorney's fees in an amount to be determined.

Respectfully submitted,

Dated: February 7, 2007

By: _____

Ira R. Mitzner, DC Bar No. 184564
Charles V. Mehler III, DC Bar No. 475909
Johnisha Matthews, DC Bar No. 492478
DICKSTEIN SHAPIRO LLP
1825 Eye Street NW
Washington, DC  20006-5403
(202) 420-2200
(202) 420-2201

*Attorneys for Plaintiffs*

DSMDB-2197273v01

# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN J. FLYNN, et al.,    ) | |
|         ) | |
|    Plaintiffs,    ) | |
|         ) | |
|    v.    ) | C.A. No. 06-2080 (ESH) |
|         ) | |
| RECON REFRACTORY & CONSTRUCTION, INC.,    ) | |
|         ) | |
|    Defendant.    ) | |
|         ) | |

## DECLARATION OF DAVID F. STUPAR

Pursuant to 28 U.S.C. § 1746, I, DAVID F. STUPAR, hereby declare as follows:

1.       I am the Executive Director of the Bricklayers & Trowel Trades International Pension Fund ("IPF" or "Fund").  I have personal knowledge of the facts stated herein and, if called to testify as a witness, I could and would competently testify as set forth below.

2.       The IPF is a construction industry multiemployer employee benefit plan administered in the District of Columbia, and subject to the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA").  The IPF is governed by an equal number of employer-appointed and union-appointed trustees, pursuant to the Taft-Hartley Act.  Benefits under the plan are funded by contributions from participating employers.

3.       The Fund provides pension and other benefits to employees who work in the construction industry under collective bargaining agreements negotiated between Bricklayer unions and employers.  Pursuant to these contracts, the employers are obligated to make contributions to the Fund.

4.    The MPPAA was enacted for the purpose of funding the liabilities generated by employers who withdraw from plans, leaving other employers to pay those liabilities. When an employer withdraws from the Fund, the Trustees have a fiduciary duty under the MPPAA to collect employer withdrawal liability ("EWL").

5.    The monies owed by employers for interim payments are needed to fund the benefits provided to the Fund's participants and beneficiaries. The Fund would be unable to fulfill its obligations to participants if withdrawing employers failed to make their interim payments, as required by the MPPAA.

6.    The Trustees of the Fund adopted Withdrawal Liability Procedures ("EWL Procedures") to govern the withdrawal of employers from the Fund, attached hereto as Ex. 1.

7.    Under the MPPAA, a participating employer is deemed to have withdrawn from the Fund when the Fund determines that the employer ceases to have an obligation to contribute to the Fund and has continued to perform work in the jurisdiction of the collective bargaining agreement of the type for which contributions were previously required.

8.    I am personally familiar with the account of Recon Refractory & Construction, Inc. ("Recon" or "Defendant").

9.    Recon is a California construction industry employer that, for a decade, made contributions to the Fund under various collective bargaining agreements it had signed with Bricklayer-affiliated unions.

10.    The Fund determined that Recon withdrew from the Fund in 2005, as it ceased making contributions to the Fund and continued to perform the same type of work it formerly carried out under the collective bargaining agreement in the same geographic area. *See* 29 U.S.C. 1383(b)(2). Consistent with 29 U.S.C. §§ 1382 and 1399(b)(1) and the EWL Procedures,

2

the Fund sent Recon a notice of assessment of EWL on October 4, 2006, attached hereto as Ex. 2. The notice assessed a total of $657,153 in EWL, to be paid on a 68-month payment schedule of $11,356.77 per month, with the first payment due on December 4, 2006, plus a final payment of $7,298.29. The Fund also simultaneously sent Recon the calculations supporting the EWL assessment performed by the Fund's actuary, attached hereto as Ex. 3.

11. Recon failed to make its first interim payment of $11,356.77 by December 4, 2006, the due date provided by the Fund's notice of assessment. Recon also failed to make its January 2007 interim payment.

12. As of the date of this Declaration, and two months after Recon's first payment was due, Defendant has not made a single withdrawal liability payment according to the Fund's payment schedule or cured its failure to make such payments in the 60-day time frame provided. Defendant currently owes $27,582.97 in delinquent interim payments, interest, and liquidated damages.

I declare under penalty of perjury that the foregoing is true and correct.

Date: February __7__, 2007

David F. Stupar
Executive Director

3

**EXHIBIT 1**

# WITHDRAWAL LIABILITY PROCEDURES OF THE
## BRICKLAYERS & TROWEL TRADES INTERNATIONAL PENSION FUND

**I.    General Provisions**

1.    The Withdrawal Liability Procedures of the Bricklayers & Trowel Trades International Pension Fund ("IPF") shall be read in conjunction with the Collection Procedures of the IPF.

2.    The Withdrawal Liability Procedures of the IPF are supplemented by Parts 2641 and 2644 of Title 29 of the Code of Federal Regulations.

**II.    Notice, Review And Payment Of Withdrawal Liability**

1.    **Notice.**

(a)    If an employer completely or partially withdraws from the IPF within the meaning of sections 4203(b)(2) or 4208(d)(1) of the Employee Retirement Income Security Act of 1974 ("ERISA"), the IPF office will send a Notice of Withdrawal Liability to the employer demanding payment.  The date of this Notice is the "Demand Date."  (Sample attached as A).

(b)    The Notice of Withdrawal Liability will advise the employer of the amount of liability owed, the schedule for liability payments, and the due date of the first liability payment (no later than 60 days after the Demand Date).

2.    **Review.**    Within 90 days from the Demand Date, the employer may request the IPF to review the amount of liability owing.  The IPF office will respond to an employer's request for review, notifying the employer of the IPF's decision and the basis

for the decision ("Reevaluated Determination").  If the employer wishes to contest the Reevaluated Determination, the employer may do so by requesting arbitration in the manner set forth in Part III below.

3.  <u>Failure to Pay</u>.  Payment according to the IPF's schedule is required notwithstanding any request for review or arbitration.  If an employer fails to make any liability payment when due (as provided in the schedule for liability payments), then the IPF Office will send written notification to the employer, requiring the employer to pay the unpaid amounts, plus interest from their due dates, within 60 days.  Pursuant to the IPF's authority under 29 C.F.R. § 2644.4 to adopt rules concerning overdue and defaulted withdrawal liability, the Collection Procedures of the IPF, including the interest rates on unpaid amounts prescribed therein, shall apply to failure to make the required payments within 60 days of such notice and shall apply to failure to pay accelerated withdrawal liability under paragraph 4 below.

4.  <u>Default and Acceleration</u>

(a)  If the employer defaults, as defined below, on its obligation to make withdrawal liability payments according to the schedule set forth by the IPF, then the IPF will have the right to require immediate payment of all or a portion of the outstanding amount of the employer's withdrawal liability, plus accrued interest thereon from the due date of the first payment which was not timely made.  In the event that the IPF accelerates

- 2 -

only a portion of the outstanding amount of the employer's withdrawal liability, the IPF shall establish a new schedule of payments for the remaining amount of the employer's withdrawal liability.

    (b)    Default occurs the 61st day after the last of:

        (1)    the date the employer receives written notification from the IPF of failure to pay under paragraph 3 above;

        (2)    the expiration of 90 days after the Demand Date under paragraph 2 above;

        (3)    the expiration of the time for initiating arbitration under Paragraph III.2 below; or

        (4)    if arbitration is timely initiated by the IPF, the employer or both, issuance of the arbitrator's decision.

## III.    Arbitration

    1.    Disputes that are left unresolved by the process delineated in paragraph II.2 above shall be resolved through arbitration.

    2.    Either the IPF or the employer may initiate an arbitration proceeding within a 60-day period after the earlier of (a) the date when the IPF provides the employer with the Reevalu-

- 3 -

ated Determination or (b) 120 days after the employer requests the
Reevaluated Determination.  In the alternative, the employer and
the IPF jointly may initiate arbitration within the 180-day period
after the Demand Date.

     3.  "Initiation" means providing the other party with a
written notice of initiation of arbitration ("Notice") within the
time limitations set forth above.  If the employer initiates
arbitration, the Notice must include a statement that the employer
disputes the IPF's determination and is initiating arbitration.
The employer shall attach to the Notice a copy of the Demand, any
request for reconsideration and any response thereto.

     4.  Within 46 days after arbitration is initiated, or
within such other period as is determined by agreement, the
employer and the IPF mutually will agree to the selection of an
arbitrator and will mail to the designated arbitrator a notice of
appointment.  The notice of appointment shall include the place
for a hearing.  In accordance with the policy reflected in Section
4301(d) of ERISA, 29 U.S.C. § 1451(d), all hearings for arbitra-
tion shall take place in the District where the Fund is
administered.

     5.  If the parties fail to agree to the selection of an
arbitrator, the Multiemployer Pension Plan Arbitration Rules for
Withdrawal Liability Disputes of the American Arbitration As-
sociation ("AAA") shall apply to the selection of an arbitrator.
Therefore, if no agreement has been reached within 45 days, the
parties will file at the Regional Office of the AAA two copies of

- 4 -

a signed written agreement to arbitrate which briefly describes the dispute and states that the parties agree to arbitrate where the Fund is administered. The parties also will submit the appropriate administrative fee. Thereafter, the AAA will submit to each party a list of at least five potential arbitrators with a brief biographical profile and fee structure of each. Within seven days, each party may object to specific candidates and list the remaining in order of preference. In response, the AAA shall invite the acceptance of an arbitrator to serve. If appointment cannot be made from the submitted lists, the AAA will make the appointment without the submission of additional lists.

6. Notwithstanding the employer's timely initiation of arbitration, the employer must meet the payment schedule set forth by the IPF unless and until the arbitrator issues a final decision with respect to the determination(s) submitted for arbitration which alters the payment schedule.

## IV. Court Action

1. Counsel will file suit promptly to recover unpaid withdrawal liability payments and/or the accelerated amount of withdrawal liability if an employer fails to make payments in accordance with the IPF's payment schedule (as set forth in the Notice of Withdrawal Liability or any subsequent modification thereof by an arbitrator or court) and does not cure this failure within 60 days after the employer receives written notification from the IPF office.

2.    The Collection Procedures and Guidelines of the IPF shall apply to all court actions filed by counsel to recover withdrawal liability payments.

**EXHIBIT 2**

 **Bricklayers & Trowel Trades International Pension Fund**

Suite 750, 1776 Eye Street, Northwest Washington, D.C. 20006
Phone: (202)/638-1996
Fax:  (202)/347-7339
http://www.ipfihf.org

Via Certified Mail
October 4, 2006

Re:  Recon Employer Withdrawal Liability

Mr. Eugene F. McMenamin, Esq.
Atkinson, Andelson, Loya, Ruud & Romo
17871 Park Plaza Dr., Suite 200
Cerritos, CA  90703-8597

Dear Mr. McMenamin:

The Bricklayers & Trowel Trades International Pension Fund ("IPF") has determined that Recon Refractory & Construction, Inc. d/b/a Recon has ceased to have an obligation to contribute to the IPF and the firm has continued to perform work in the jurisdiction of the collective bargaining agreement of the type for which contributors were previously required. Our calculations are based on information received from the Fund Office and Fund estimates of contributions for the years 2000 through 2004. The Fund provided these estimates using an annual contribution of $79,311.45 (average contributions in 1997 and 1998) starting in 2000. In addition, the payment schedule was determined using the contribution base units of 84,665 hours (which is the average for years 1997 and 1998), as provided by the Fund, for years 2000 through 2004.

In accordance with the provisions of the Multiemployer Pension Plan Agreements Act of 1980 ("MPPAA"), we have calculated your Employer Withdrawal Liability ("EWL") to be $657,153.00. The basis for this EWL is contained in the attached report from the IPF Actuary.

Also in accordance with the MPPAA, the Board of Trustees has adopted a monthly payment schedule for satisfaction of this EWL. Pursuant to this schedule, you are required to pay the IPF $11,356.77 monthly for 68 months plus a final payment of $7,298.29. This payment schedule reflects an amortization of the total EWL over the number of months indicated above.

The first payment must be made within 60 days of the date of this letter. Thereafter, payment must be made no later that the 15th day of the month following the month payment is due (the "Due Date"). If payment is not received by December 3, 2006, you will be subject to interest, liquidated damages, costs and/or attorney's fees, in accordance with the IPF's collection procedures.

Should there be any questions regarding this matter, please contact the Fund office in writing.

Sincerely,

*David F. Stupar, JRM*

David F. Stupar
Executive Director

cc: Ira R. Mitzner Fund Counsel
BAC Local 04 CA

enclosures

EXHIBIT 3

# M E M O R A N D U M

**FROM:**  Alan P. Cohn       **DATE:** October 2, 2006
      Darrin Owens

**TO:**   David Stupar, Executive Director
      Bricklayers and Trowel Trades International Pension Fund

**RE:**   **Withdrawal Liability for Recon Refractory & Construction, Inc.**

As requested, we have determined the withdrawal liability calculation for Recon Refractory & Construction, Inc. ("Recon"). Our calculations are based on information received from the Fund Office and Fund estimates of contributions for the years 2000 through 2004. The Fund provided these estimates using an annual contribution of $79,311.45 (average contributions in 1997 and 1998) starting in 2000. In addition, the payment schedule was determined by using the contribution base units of 84,665 hours (which is the average for 1997 and 1998), as provided by the Fund, for years 2000 through 2004.

Except as noted above, our calculations are based on information received from the Fund Office with respect to Recon's hours and contribution rate history (1995 – 2004) and an actual withdrawal date of February 2005. Please note that it is also our understanding that this employer is not part of a larger controlled group. We have attached the withdrawal liability calculation and the payment schedule for this liability.

All calculations were done under the supervision of Diane Gleave, ASA, FCA, MAAA, Enrolled Actuary.

Please let us know if you have any questions.

Best regards.

cc:  Ira Mitzner, Esq.

6013348v1/02073.009

Recon
Page 2 of 7

**I.**    **Withdrawal Liability Allocation to Recon**

Based on an actual withdrawal date of February 2005

| | | |
|---|---|---|
| 1. | December 31, 2004 initial plan year unfunded present value of vested benefits | $595,226,287 |
| 2. | Total contributions of withdrawing employer January 1, 2000 to December 31, 2004 | 396,557[*] |
| 3. | Total contributions of all employers January 1, 2000 to December 31, 2004 | 359,187,717 |
| 4. | Allocable share of liability: [(1) x (2) ÷ (3)] | 657,153 |
| 5. | Excused due to De Minimis Rule[**] | 0 |
| 6. | Net withdrawal liability: (4) - (5) | 657,153 |

---

[*]    The employer contributions used for 2000 through 2004 are $79,311.45 per year (average contributions in 1997 and 1998), as estimated by the Fund.

[**]   The de minimis deductible is equal to $50,000 reduced $1 for each $1 that the allocable share of liability exceeds $100,000. If the allocable share of liability exceeds $150,000, the de minimis deductible is $0.

Recon
Page 3 of 7

**II.**     <u>Determining Payment Amount and Length of Payment Period for Recon</u>

(a)     Withdrawal liability          $657,153

Hours of contributions for fiscal years ended December 31:

| | | | |
|---|---|---|---|
| 1995 | 73,927 | 2000 | 84,665* |
| 1996 | 61,691 | 2001 | 84,665* |
| 1997 | 79,135 | 2002 | 84,665* |
| 1998 | 90,194 | 2003 | 84,665* |
| 1999 | 41,902 | 2004 | 84,665* |

| | | |
|---|---|---|
| (b) | Highest consecutive three-year average hours in the last 10 years prior to the year of withdrawal | 84,665 |
| (c) | Highest contribution rate in 10 years ending with year of withdrawal | $1.60 |
| (d) | Required annual payment: (b) x (c) | $135,464 |
| (e) | Amortization ratio: (a) / (d) | 4.851126 |
| (f) | Largest value in Factor Table Column I which is less than (e) | 4.349326 |
| (g) | Number of years for value (f) | 5 |
| (h) | Amount amortized in (g) years: (d) x (f) | $589,177.13 |
| (i) | Amount left to amortize: (a) - (h) | $67,975.87 |
| (j) | Amount to amortize in the final year: (i) x Table Column II value for (g) years | $97,588.15 |
| (k) | Quarterly payment: (d) ÷ 4 | $33,866.00 |
| (l) | Adjusted monthly payment: (k)/2.98201 | $11,356.77 |
| (m) | Full quarters to pay in final year: (j) ÷ (k) | 2 |

---

\*     The average contribution base units for 2000 through 2004 was based on the average in 1997 and 1998 of 84,665 hours of contributions.

Recon
Page 4 of 7

| | | | |
|---|---|---|---|
| (n) | Amount to pay in final quarter: (j) - [(k) x (m)] | | $29,856.15 |
| (o) | Full monthly payments in final quarter:  (n)/(l) | | 2 |
| (p) | Number of full monthly payments: [12 x (g)] + [3 x (m)] + (o) | | 68 |
| (q) | Final payment | | $7,298.29 |

Employer pays:

$11,356.77 per month for 68 months plus a final payment of $7,298.29.

Recon
Page 5 of 7

# FACTOR TABLE

| Number of years | COLUMN I<br><br>Present value<br>of $1 per year<br><br>For withdrawals<br>during 2005 | COLUMN II<br><br>Accumulation<br>of $1<br><br>For withdrawals<br>during 2005 |
|---|---|---|
| 0 | 0.000000 | 1.000000 |
| 1 | 1.000000 | 1.075000 |
| 2 | 1.930233 | 1.155625 |
| 3 | 2.795565 | 1.242297 |
| 4 | 3.600526 | 1.335469 |
| 5 | 4.349326 | 1.435629 |
| 6 | 5.045885 | 1.543302 |
| 7 | 5.693846 | 1.659049 |
| 8 | 6.296601 | 1.783478 |
| 9 | 6.857304 | 1.917239 |
| 10 | 7.378887 | 2.061032 |
| 11 | 7.864081 | 2.215609 |
| 12 | 8.315424 | 2.381780 |
| 13 | 8.735278 | 2.560413 |
| 14 | 9.125840 | 2.752444 |
| 15 | 9.489154 | 2.958877 |
| 16 | 9.827120 | 3.180793 |
| 17 | 10.141507 | 3.419353 |
| 18 | 10.433960 | 3.675804 |
| 19 | 10.706009 | 3.951489 |
| 20 | 10.959078 | 4.247851 |
| Interest rate | 7.5% | 7.5% |

Recon
Page 6 of 7

## ACTUARIAL ASSUMPTIONS AND METHODS
## FOR WITHDRAWAL LIABILITY PURPOSES

**Investment return:**

(a)      To the extent vested benefits are matched by the market value of plan assets on hand: interest assumptions prescribed by the Pension Benefit Guaranty Corporation under 29 C.F.R. Part 4044 for terminating single-employer plans which are in effect for the applicable withdrawal liability valuation date plus 1.00%. This 1.00% adjustment reflects our studies which suggest that adjustments are necessary to reflect actual rates available on non-participating annuity contracts for pension plans.

|                                   | **2004**  |
| --------------------------------- | --------- |
| Select rate for the first n years | 4.80%     |
| Select period                     | 20 years  |
| Ultimate rate                     | 6.00%     |

(b)      To the extent the vested benefits are not matched by plan assets (at market): the interest assumption used for plan funding, which was 7.50% as of December 31, 2004.

(c)      The portion of the vested benefits that is matched by assets is determined by comparing the total present value of vested benefits — at adjusted PBGC rates — with the total market value of assets; each vested benefit is treated as covered by assets to the same extent as all other vested benefits.

**Mortality**

Healthy:      1983 Group Annuity Mortality Table

Disabled:      1983 RRB Disabled Annuitants Mortality Table, set back two years

**Administrative Expenses**

No separate administrative expense charge except for that portion of the vested benefits that is matched by assets. For that portion, an expense load equal to that prescribed in Appendix C to PBGC Reg. Part 4044 based on the adjusted PBGC interest rates is used.

Recon
Page 7 of 7

**Retirement rates**

| Age | Retirement Probability (%) |
|:---:|:---:|
| 55 – 56 | 2 |
| 57 – 59 | 5 |
| 60 – 61 | 15 |
| 62 | 45 |
| 63 | 35 |
| 64 | 25 |
| 65 | 45 |
| 66 – 70 | 30 |
| 71 & older | 100 |

Note:   The above rates are applicable to active participants.  Inactive participants are assumed to retire at age 60.

**Assets**

Valued at fair market value as reported in the Plan's audited financial statements.

**Unknowns**

Participants, whose age and/or service is unknown, are assumed to have same age and/or service distribution as for corresponding group of participants for whom the data are known.

**Allocation Method**

The Plan uses the presumptive method under PBGC Regulation Part 4211.32 required for construction industry plans in allocating withdrawal liability for funds that merge with other multiemployer funds. The Trustees have adopted the alternative rules detailed in PBGC Regulation Part 4211.36(b) and (d)(1). These alternative rules allow the Plan to restart its "initial plan year" liabilities.  In light of the fact that a merger occurred in 2003, the initial plan year liability has been restarted as of December 31, 2004.

# Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN J. FLYNN, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | C.A. No. 06-2080 (ESH) |
| ) | |
| RECON REFRACTORY & CONSTRUCTION, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

## DECLARATION OF IRA R. MITZNER

Pursuant to 28 U.S.C. § 1746, I, IRA R. MITZNER, hereby declare as follows:

1.    I am a partner with the law firm Dickstein Shapiro LLP and the counsel of record for the Plaintiffs, Trustees of the Bricklayers & Trowel Trades International Pension Fund ("Fund" or "IPF"), in the above-captioned case. I have personal knowledge of the facts stated herein and, if called to testify as a witness, I could and would testify as set forth below.

2.    On October 4, 2006, David F. Stupar, the Executive Director of the Fund, sent Defendant Recon Refractory & Construction, Inc. ("Recon") a notice of assessment of employer withdrawal liability ("EWL") for $657,153, with a 68-month payment schedule of $11,356.77 per month, with the first payment due on December 4, 2006, plus a final payment of $7,298.29 pursuant to 29 U.S.C. § 1399(b)(1)(A). My office received a copy of the above-described letter from Mr. Stupar.

3.    On December 5, 2006, the Fund informed my office that it had not received the initial interim payment from Recon due on December 4, 2006. On the same date, I filed a Complaint on behalf of Plaintiffs seeking judgment against Defendant for the initial interim payment owed, in the amount of $11,356.77. Additionally, the Complaint sought interest

assessed on the overdue payment, additional interest or liquidated damages, attorney's fees and costs, and any other such legal or equitable relief as the Court deems appropriate. Plaintiffs requested this additional relief pursuant to 29 U.S.C. §§ 1132(g)(2)(B) and 1451(b), which permit a plan sponsor to treat any failure of an employer to make any EWL payment as a delinquent contribution. The Complaint was not served on Recon at the time of filing, in hopes that Recon would fulfill its obligations and avoid the need for the Fund to pursue this litigation.

4.     On December 6, 2006, 60 days after the Fund's notice of assessment, and pursuant to 29 U.S.C. § 1399(c)(2), my office sent a letter to counsel for Recon, attached hereto as Ex. 4, notifying Recon that it had failed to make its initial interim payment of $11,356.77 due December 4, 2006. This notice provided Recon with an additional 60 days, or until February 5, 2007, to cure its failure to make its initial interim payment or be deemed in default.

5.     In a January 5, 2007 letter, attached hereto as Ex. 5, counsel for Defendant notified me that it was demanding arbitration in dispute of the EWL assessed by The Fund. Recon advised that it was disputing "the withdrawal liability amounts and the amortization schedule, without limit." Counsel for Defendant requested that I contact him in order to select an arbitrator, and further asked for a clarification of one provision of the Fund's Withdrawal Liability Procedures ("EWL Procedures"), which had been enacted by the Trustees.

6.     In a January 23, 2007 letter, attached hereto as Ex. 6, I responded to Recon's request for clarification, acknowledging Recon's notice of arbitration and suggesting potential arbitrators.

7.     Two months after Recon's first interim payment was due, and as of the date of this declaration, Recon still has not made a single interim payment.

2208304.01

8. Pursuant to 29 U.S.C. § 1401(d), the Fund is entitled to interim payments throughout the pendency of any arbitration of the EWL dispute and until a final decision is reached by the arbitrator.

9. As set forth in the accompanying Declarations of David F. Stupar and Claudette M. Elmes, Plaintiffs request judgment in the amount of $22,713.54 for the missed December 2006 and January 2007 interim payments, in addition to $326.71 in interest, and $4,542.72 in liquidated damages, for a total of $27,582.97. Plaintiffs also request the award of attorney's fees and costs in this matter. We are prepared to submit a declaration setting forth attorney's fees and costs within thirty days of the entry of an order in the Fund's favor, or at such other time as the Court directs.

I declare under penalty of perjury that the foregoing is true and correct.

Date: February 7, 2007

Ira R. Mitzner

3

2208304.01

**EXHIBIT 1**

**DICKSTEIN**SHAPIRO LLP

1825 Eye Street NW | Washington, DC 20006-5403
TEL (202) 420-2200 | FAX (202) 420-2201 | dicksteinshapiro.com

December 6, 2006

**By Facsimile & Certified Mail**

Mr. Eugene F. McMenamin, Esq.
Atkinson, Andelson, Loya, Ruud & Romo
17871 Park Plaza Drive,
Suite 200
Cerritos, CA 90703-8597

Re:    Recon Refractory & Construction, Inc. Withdrawal Liability Default Notification

Dear Mr. McMenamin:

On October 4, 2006, David F. Stupar, Executive Director of the Bricklayers and Trowel Trades International Pension Fund ("IPF"), sent Recon Refractory & Construction, Inc. ("Recon") a demand for Employer Withdrawal Liability ("EWL"), along with attached reports from the IPF's actuary setting forth the basis for the EWL owed by this company. The EWL demand indicated that Recon owed EWL in the amount of $657,153.00, pursuant to the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA") and the IPF's Withdrawal Liability Procedures. The EWL demand further explained that Recon is required to make interim EWL payments to the IPF reflecting an amortization of the total EWL over a number of months. Specifically, Recon is required to pay the IPF $11,356.77 for 68 months plus a final payment of $7,298.29.

In addition, the October 4, 2006 demand letter instructed Recon that its first interim EWL payment was required to be made within 60 days of October 4, 2006, or by December 4, 2006. As of the date of this letter, Recon has failed to make its initial payment in a timely fashion. Accordingly, Recon is hereby notified that it has 60 days from the date of this letter to cure this failure and make the interim payments required pursuant to the payment schedule set forth in the IPF's October 4, 2006 demand. If Recon does not make such payments within 60 days, or on or before February 5, 2007, it will be deemed in default pursuant to 29 U.S.C. § 1399(c)(5) and the IPF Withdrawal Liability Procedures. At that point, the IPF will be entitled to immediate payment of the total outstanding EWL, plus accrued interest on the total outstanding liability from the due date of the first payment that was not timely made, plus any other damages recoverable under ERISA and/or the IPF procedures.

DSMDB.2180589.01

**DICKSTEIN**SHAPIRO LLP

Mr. Eugene F. McMenamin, Esq.
December 6, 2006
Page 2


Very truly yours,

Ira R. Mitzner
(202) 420-2234
mitzneri@dicksteinshapiro.com

IRM/jm

cc:    David F. Stupar, Executive Director, IPF
       Michael Murphy, Director, Revenue Accounting, IPF
       Craig Weir, Editor, IPF

DSMDB.2180589.01

EXHIBIT 2

ATKINSON, ANDELSON, LOYA, RUUD & ROMO

A PROFESSIONAL CORPORATION

**ATTORNEYS AT LAW**

17871 PARK PLAZA DRIVE, SUITE 200
CERRITOS, CALIFORNIA 90703-8597
(562) 653-3200 · (714) 826-5480

FAX (562) 653-3333
WWW.AALRR.COM

RIVERSIDE
3612 MISSION INN AVENUE, UPPER LEVEL
RIVERSIDE, CALIFORNIA 92501
(909) 683-1122
FAX (909) 683-1144

PLEASANTON
5776 STONERIDGE MALL ROAD, SUITE 200
PLEASANTON, CALIFORNIA 94588
(925) 227-9200
FAX (925) 227-9202

SACRAMENTO
555 CAPITOL MALL, SUITE 645
SACRAMENTO, CALIFORNIA 95814
(916) 447-4300
FAX (916) 447-4333

SAN DIEGO
11440 WEST BERNARDO COURT, SUITE 174
SAN DIEGO, CALIFORNIA 92127
(858) 485-9526
FAX (858) 485-9412

OUR FILE NUMBER:

004637.00023
70501 1v1

January 5, 2007

*VIA FACSIMILE*
*AND CERTIFIED MAIL*
*RETURN RECEIPT REQUESTED*

Ira R. Mitzner, Esq.
Dickstein, Shapiro, Morin & Oshinsky, LLP
2101 L Street, N.W.
Washington, D.C. 20037-1526

**RE:     RECON REFRACTORY ENGINEERING & CONSTRUCTION, INC.**
Demand for Arbitration of Withdrawal Liability Claim

Dear Mr. Mitzner:

Recon Refractory Engineering & Construction, Inc. ("Recon") hereby demands and invokes arbitration of the Trowel Trades International Pension Fund's ("IPF") latest request for withdrawal liability in the amount of $657,153.00. This demand for arbitration is made pursuant to 29 U.S.C. § 1401(a), 29 C.F.R. Part 4221, and the IPF's Withdrawal Liability Procedures.

Recon disputes both the withdrawal liability amounts and the amortization schedule, without limitation.

Please contact us at your earliest convenience to select an arbitrator to hear this dispute.

The IPF's Withdrawal Liability Procedures at section III "arbitration" references a "reevaluation determination." This reference is unclear and ambiguous. If the IPF contends that this attempt to invoke arbitration is not ripe or otherwise requires us to satisfy some procedural requisite, we expect and demand that you so advise us so that any such deficiency can be cured.

We are compelled to reiterate that the IPF's withdrawal liability calculation is premised upon a completely fabricated contribution history for the years 2000, 2001, 2002, 2003 and 2004. Until such time as the matter of Recon's contribution history is liquidated and finalized, the IPF's withdrawal liability demand here is premature.

By invoking arbitration now, Recon acts only to preserve its right to arbitrate pursuant to 29 U.S.C. § 1401(a). Recon expects the IPF to join with it in staying arbitration until the issue of

ATKINSON, ANDELSON, LOYA, RUUD & ROMO

Ira R. Mitzner, Esq.
Dickstein, Shapiro, Morin & Oshinsky, LLP
January 5, 2007
Page 2

Recon's contribution history is resolved in a separate forum. Recon explicitly refuses to allow
the issue of its contribution history to be subject to arbitration here.

We look forward to hearing from you at your earliest convenience.

Very truly yours,

ATKINSON, ANDELSON, LOYA, RUUD & ROMO

Eugene F. McMenamin

EFM:txm

**EXHIBIT 3**

**DICKSTEIN**SHAPIRO LLP

1825 Eye Street NW  |  Washington, DC 20006-5403
TEL (202) 420-2200  |  FAX (202) 420-2201  |  dicksteinshapiro.com

January 23, 2007

**By Facsimile & Certified Mail**

Mr. Eugene F. McMenamin, Esq.
Atkinson, Andelson, Loya, Ruud & Romo
17871 Park Plaza Drive,
Suite 200
Cerritos, CA 90703-8597

Re:   <u>Recon Refractory & Construction, Inc. Withdrawal Liability Default Notification</u>

Dear Mr. McMenamin:

   I am writing in response to your letter of January 5, 2007.  We accept your letter as sufficient for purposes of providing notice of Recon Refractory & Construction, Inc.'s ("Recon") initiation of arbitration in dispute of its employer withdrawal liability.  You need not do anything further to perfect this notice.

   You previously rejected our proposal to use arbitrators Judith La Manna and Lawrence Katz.  We do not find acceptable your suggestion of Gerald McKay.  We therefore propose either Ira F. Jaffee or David Branin as arbitrators for this dispute.  Both are experienced in this area. The MPPAA arbitration decisions suggest that Mr. Jaffe is one of the leading arbitrators in the field.  I have never had a case with either arbitrator, nor spoken with either of them.

   Your client has failed to make interim payments, as we informed you in my letter of December 6, 2006.  We urge Recon to comply with its statutory obligation.

   We look forward to your response in this matter.

Very truly yours,

Ira R. Mitzner
(202) 420-2234
mitzneri@dicksteinshapiro.com

IRM/jm

DSMDB.2203409.01

**DICKSTEIN**SHAPIRO LLP

Mr. Eugene F. McMenamin, Esq.
January 23, 2007
Page 2


cc:    David F. Stupar, Executive Director, IPF
       Michael Murphy, Director, Revenue Accounting, IPF
       Craig Weir, Editor, IPF

# Exhibit C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JOHN J. FLYNN, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-2080 (ESH) |
| | ) | |
| RECON REFRACTORY & CONSTRUCTION, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DECLARATION OF CLAUDETTE M. ELMES

Pursuant to 28 U.S.C. § 1746, I, CLAUDETTE M. ELMES, hereby declare as follows:

1.  I am a paralegal specialist with the law firm Dickstein Shapiro LLP.  I assist Ira R. Mitzner, counsel to the Plaintiffs, Trustees of the Bricklayers & Trowel Trades International Pension Fund ("Fund" or "IPF"), in the above-captioned case.  I have personal knowledge of the matters stated in this Declaration and, if called to testify as a witness, I could and would testify as set forth herein.

2.  On October 4, 2006, David F. Stupar, the Executive Director of the Fund, sent Defendant Recon Refractory & Construction ("Recon") a notice of assessment of employer withdrawal liability ("EWL") for $657,153, with a 68-month payment schedule of $11,356.77 per month, with the first payment due on December 4, 2006, plus a final payment of $7,298.29, pursuant to 29 U.S.C. § 1399(b)(1)(A).  The Fund has informed our office that, to date, it has not received the first two interim payments from Recon for December 2006 and January 2007, for an amount due of $22,713.54.

3.  In accordance with the IPF's Collection Procedures, attached hereto as Ex. 7, the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), and the Employee

Retirement Income Security Act of 1974 ("ERISA"), I assessed interest on the total of $11,356.77 due the IPF for Recon's December 2006 interim payment at the rate of 15 percent per annum (as provided in the plan), running from one day after the due date of December 4, 2006 through February 6, 2007. Based on my calculations, the total interest due from Recon for the month of December 2006 is $298.70.

4.    In accordance with the IPF's Collection Procedures, the MPPAA, and ERISA, I assessed interest on the total of $11,356.77 due the IPF for Recon's January 2007 interim payment at the rate of 15 percent per annum, running from one day after the due date of January 31, 2007 through February 6, 2007. Based on my calculations, the total interest due from Recon for the month of January 2007 is $28.01.

5.    In accordance with the IPF's Collection Procedures, the MPPAA, and ERISA, I also assessed liquidated damages on the total of $22,713.54 due the IPF in EWL payments for the months of December 2006 and January 2007, at the rate of 20 percent. Based on my calculations, the total due in liquidated damages to the IPF by Recon for these two months is $4,542.72.

6.    Based on my computations, as outlined above, Recon owes the IPF $22,713.54 in delinquent EWL payments, $326.71 in interest, and $4,542.72 in liquidated damages, for a total of $27,582.97 due the IPF for the months of December 2006 and January 2007.

I declare under penalty of perjury that the foregoing is true and correct.

Date: February 7th, 2007          _____
                                                    Claudette M. Elmes

2

2209168.01

**EXHIBIT 1**

5/13/02

# GENERAL COLLECTION PROCEDURES OF
# THE CENTRAL COLLECTION UNIT OF
# <u>THE BRICKLAYERS AND ALLIED CRAFTWORKERS</u>

These General Collection Procedures govern the collection of delinquencies by the Central Collection Unit of the Bricklayers and Allied Craftworkers ("CCU") on behalf of the following participating entities: Bricklayers and Allied Craftworkers International Union ("BAC"); Bricklayers and Trowel Trades International Pension Fund ("IPF"); Bricklayers and Allied Craftworkers International Health Fund ("IHF"); International Masonry Institute ("IMI"); Bricklayers and Allied Craftworkers Political Action Committee ("BACPAC"); and Local Officers and Employees Pension Fund ("LOEPF") (collectively "CCU Entities"). IHF and BAC SAVE are covered by Special Collection Procedures. Such Special Collection Procedures shall control when in conflict with these General Procedures.

I.    REPORTS AND PAYMENTS TO CCU ENTITIES

   A.    Due Date

   1.    Contributions and reports to the CCU Entities are due on or before the 15th day of the month following the month for which the contributions are being paid ("Due Date"), unless the collective bargaining agreement imposes a different Due Date.

   2.    Reports of participating employers must be filed each month even if no contributions are due for that month. All participating employers, whether submitting contributions directly or through a local administrator or local union, must use the standard CCU report form.

   3.    Employer reports will be date-stamped on the day received in the CCU Office, or in the case of local administrators or local unions, on the day received by the local. The stamped date will be the controlling date with regard to these Collection Procedures.

   4.    If any controlling date under these Collection Procedures falls on a weekend or legal holiday, the applicable date will be the next working day.

5.      The IPF is authorized by other CCU Entities to act on their behalf in litigation. All references to "CCU Office" in these Collection Procedures may also refer to "IPF Office," as applicable.

B.    Notice Of Delinquency

1.      If the CCU Office has not received payment by the last day of the month of the Due Date, the CCU Office will send a Reminder Notice to the employer. If payment has not been received 30 days after the Reminder Notice, a Notice of Delinquency will be sent to the employer.

2.      The Notice of Delinquency will advise the employer that required contributions were not received by the Due Date and warn that if the contributions are not received within 15 days (60 days following the Due Date), the employer will be considered delinquent ("Delinquent Date") and will be assessed interest at 15% per annum (retroactive to the Due Date) and may be required to pay Liquidated Damages of 20% of the delinquent amount. The Notice of Delinquency will require the employer to notify the CCU Office within five (5) days of the date of notice if the employer believes that the Notice of Delinquency was sent in error.

C.    Notice Of Referral To Counsel

1.      If the CCU Office has not received payment within 15 days of the Notice of Delinquency, the CCU Office will send to the employer a Notice of Referral to Counsel.

2.      The Notice of Referral to Counsel will advise the employer that payments were not received by the Delinquent Date and that payments for contributions and interest are due and owing. Unless all sums owed are received by the CCU Office within 10 days following the Notice of Referral to Counsel, liquidated damages up to 20% of the delinquent contributions or statutory interest may be imposed and the matter automatically will be referred to counsel. The Notice of Referral to Counsel also will state that counsel will be instructed to seek all sums recoverable, including contributions, interest, liquidated damages or statutory interest, and all attorneys' fees.

2

II.    COUNSEL

    A.    Procedures

        1.    If CCU has not received the contributions and applicable interest within 10 days of the Notice of Referral to Counsel, the matter automatically will be referred to counsel no later than 15 days from the due date.

        2.    Within 10 days of referral, counsel will send a letter to the employer advising that if payment of contributions, interest and other damages is not received within 10 days, suit will be instituted.

        3.    Suit thereafter will be instituted.

    B.    CCU Policy Following Referral To Counsel

        1.    Following the referral of a matter to counsel, the CCU Office will have no authority to deal with an employer except to discuss computations.

        2.    Counsel shall file suit for all moneys recoverable, including damages that may be recoverable under Section 502(g)(2) of ERISA and also may seek remedies under applicable state law against individual corporate officers and/or shareholders.

        3.    The CCU is authorized to seek legal redress prior to the time that the above procedures are exhausted if, in his sole discretion, the Director concludes that the interests of affected participants require immediate action.  If an employer fails to make payment when due, suit may be filed to collect all delinquent contributions, interest and other damages regardless of other exhaustion requirements in these Collection Procedures.

III.    AUDITS

    Audits will be conducted to insure full compliance with employer obligations under collective bargaining agreements.  Every employer can expect to be audited at some time.  If a delinquency is discovered as the result of an audit, the employer will be assessed the cost of the audit.

A.    Detection Of Delinquent Employers Subject To Audit

    1.    At least once every year, the Executive Directors of the IPF and IHF will send information to participants reflecting contributions received from participating employers. The participants will be encouraged to report missing hours to the CCU.

    2.    The CCU will take steps to insure that delinquencies of participating employers are recovered.

B.    Audits Performed By Third Parties

    1.    The CCU will rely upon audits performed by third parties when CCU determines that they conform to auditing procedures contained in the CCU's Guidelines.

    2.    The CCU periodically will monitor the audits of third parties in order to confirm their reliability.

C.    Audits Performed On Employers Contributing Directly To The CCU

    1.    The CCU will coordinate with third parties who perform audits on employers contributing directly to CCU and will insure that such audits conform to CCU guidelines.

    2.    As to employers contributing directly to the CCU who are not subject to audits by third parties, CCU will perform two types of payroll audits on directly contributing employers in order to insure compliance.

        a.    <u>Random Audits</u> -- Audits may be conducted on any participating employer at any time, on a random basis, at the direction of the Director.

        b.    <u>Problem Audits</u> -- When the Director receives information from a local union, covered member or other source indicating that an employer may be delinquent, the Director may order that an audit be conducted.

D.    Notification Of Audit Delinquency

    1.    The CCU Office will send a Notice of Delinquency to audited employers found to be delinquent stating the amount of additional contributions owing as a result of the audit.

    2.    Any unsatisfied audit deficiency will be treated according to the CCU's Collection Procedures following the intervention of counsel.

4

E.  Form of Audits

    1.  All audits will be carried out under procedures formulated by the Director.

    2.  All employer books and records set forth in the audit procedures will be made available to the CCU auditor.

IV.  BONDS

The Director may, in his sole discretion, require an employer to post a cash or surety bond in an amount and under terms necessary to protect the interests of the applicable CCU Entity.

1449336 v1; V2BC01!.DOC

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHN J. FLYNN, et al.,

        Plaintiffs,

        v.

RECON REFRACTORY & CONSTRUCTION, INC.,

        Defendant.

C.A. No. 06-2080 (ESH)

## ORDER

Upon the Plaintiffs' Motion for (i) a Preliminary Injunction Compelling Interim Payments of EWL and (ii) an Expedited Hearing, the memorandum filed in support, any opposition and reply thereto, and the arguments made at any hearing in this matter, the Court finds that the Plaintiffs' motion should be granted. **ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiffs' motion be, and it hereby is, **GRANTED**, and further

**ORDERED** that a preliminary injunction is hereby entered compelling the Defendant, Recon Refractory & Construction, Inc. ("Recon"), to pay all employer withdrawal liability ("EWL") payments in accordance with the schedule set forth in the Plaintiffs' October 4, 2006 letter to Recon, unless and until an arbitrator determines that the Fund is not entitled to the assessed EWL, and further

**ORDERED** that Recon must the pay the Plaintiffs a total of $27,582.97, representing past due EWL payments for December 2006 and January 2007, plus interest and liquidated damages; and further

**ORDERED** that Recon must pay the Plaintiffs the attorney's fees and costs incurred by the Plaintiffs in pursuing the motion to compel interim payments; and further

**ORDERED** that counsel for the Plaintiffs shall file with the Court, within 30 days of this Order, an application delineating the total amount of attorney's fees and costs incurred in pursuing the motion to compel interim payments.

**SO ORDERED**, this _____ day of _____, 2007.

_____
Ellen Segal Huvelle
United States District Court Judge
District of Columbia

2

DSMDB-2208264v01

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JOHN J. FLYNN, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-2080 (ESH) |
| | ) | |
| RECON REFRACTORY & CONSTRUCTION, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## LOCAL RULE 7(k) STATEMENT

Pursuant to Local Rule 7(k), the following persons are entitled to be served with orders, judgments and stipulations:

Ira R. Mitzner, Esquire
Dickstein Shapiro LLP
1825 Eye Street, N.W.
Washington, DC 20006

Eugene F. McMenamin, Esq.
Atkinson, Andelson, Loya, Ruud & Romo
17871 Park Plaza Drive, Suite 200
Cerritos, CA 90703-8597

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN J. FLYNN, et al., | ) |
| Plaintiffs, | ) |
| v. | ) C.A. No. 06-2080 (ESH) |
| RECON REFRACTORY & CONSTRUCTION, INC., | ) |
| Defendant. | ) |

## ORDER

Upon the Plaintiffs' Motion for (i) a Preliminary Injunction Compelling Interim Payments of EWL and (ii) an Expedited Hearing, the memorandum filed in support, and any opposition and reply thereto, the Court finds that the Plaintiffs' motion should be granted. **ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiffs' motion be, and it hereby is, **GRANTED**, and further

**ORDERED** that parties shall appear before the Court for an expedited hearing on February _____, 2007, so that the Court may rule on the injunctive and other relief requested.

**SO ORDERED**, this _____ day of _____, 2007.

_____
Ellen Segal Huvelle
United States District Court Judge
District of Columbia

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN J. FLYNN, et al.,<br><br>        Plaintiffs,<br><br>        v.<br><br>RECON REFRACTORY & CONSTRUCTION, INC.,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)   C.A. No. 06-2080 (ESH)<br>)<br>)<br>)<br>)<br>) |

## **LOCAL RULE 7(k) STATEMENT**

Pursuant to Local Rule 7(k), the following persons are entitled to be served with orders, judgments and stipulations:

Ira R. Mitzner, Esquire
Dickstein Shapiro LLP
1825 Eye Street, N.W.
Washington, DC  20006

Eugene F. McMenamin, Esq.
Atkinson, Andelson, Loya, Ruud & Romo
17871 Park Plaza Drive, Suite 200
Cerritos, CA  90703-8597

DSMDB-2211326v01